**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 25-5109**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

ASSOCIATED PRESS,

*Plaintiff-Appellee*,

v.

TAYLOR BUDOWICH, in his official capacity
as White House Deputy Chief of Staff, et al.

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Columbia, No. 1:25-cv-532-TNM
Hon. Trevor N. McFadden, J.

**PLAINTIFF-APPELLEE THE ASSOCIATED PRESS'S RESPONSE
IN OPPOSITION TO EMERGENCY MOTION FOR STAY
AND AN IMMEDIATE ADMINISTRATIVE STAY**

Jay Ward Brown
Charles D. Tobin
Maxwell S. Mishkin
Sasha Dudding
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
brownjay@ballardspahr.com

# TABLE OF CONTENTS

CERTIFICATE OF PLAINTIFF-APPELLEE AS TO PARTIES,
RULINGS, AND RELATED CASES ................................................................. iii

    A.    Parties and Amici ................................................................. iii

    B.    Rulings Under Review ...................................................... iii

    C.    Related Cases ...................................................................... iv

    D.    Rule 26.1 Corporate Disclosure Statement .......................... iv

PRELIMINARY STATEMENT ........................................................................1

FACTUAL BACKGROUND ...........................................................................2

    A.    The AP and the White House Press Pool ..............................2

    B.    The Gulf of Mexico and Mount McKinley ...........................3

    C.    The White House Tries to Coerce the AP into Changing its
        Journalism ...........................................................................4

    D.    The AP Files Suit to Vindicate its Constitutional Rights ....................6

    E.    The District Court Grants a Preliminary Injunction.............................7

ARGUMENT ...................................................................................................7

I.    THE GOVERNMENT IS NOT LIKELY TO PREVAIL ON APPEAL ........8

    A.    The Government Is Not Likely To Prevail On Appeal
        Against The AP's First Amendment Viewpoint-
        Discrimination Claims.........................................................9

    B.    The Government Is Not Likely To Prevail On Appeal As To
        The First Amendment Retaliation Claims...........................17

II.    THE GOVERNMENT WOULD NOT BE HARMED ABSENT A
    STAY ...................................................................................................19

III.    A LONGER STAY WOULD SUBSTANTIALLY HARM THE
AP AND THE PUBLIC ...................................................................20

CONCLUSION .......................................................................................23

## CERTIFICATE OF PLAINTIFF-APPELLEE
## AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28, Plaintiff-Appellee the Associated Press certifies as follows:

### A. Parties and Amici

Plaintiff-Appellee is the Associated Press.

Defendants-Appellants are Taylor Budowich, in his official capacity as White House Deputy Chief of Staff; Karoline C. Leavitt, in her official capacity as White House Press Secretary; and Susan Wiles, in her official capacity as White House Chief of Staff.

The White House Correspondents' Association, the Reporters Committee for Freedom of the Press, the Center for American Rights, the Knight First Amendment Institute at Columbia University, and the State Democracy Defenders Fund participated as amici curiae in the District Court.

### B. Rulings Under Review

The ruling under review is a Memorandum Order issued by the Honorable Trevor N. McFadden on April 8, 2025, granting the Associated Press's Amended Motion for Preliminary Injunction. The ruling is available on Westlaw at 2025 WL 1039572.

## C.    Related Cases

This case has not previously been before this Court or any court other than the District Court.  Undersigned counsel is unaware of any related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

## D.    Rule 26.1 Corporate Disclosure Statement

The Associated Press is a news cooperative incorporated under the Not-for-Profit Corporation Law of New York and has no parents, subsidiaries or affiliates that have any outstanding securities issued to the public.

*/s/ Jay Ward Brown*
Jay Ward Brown (#437686)

## PRELIMINARY STATEMENT

Earlier this week, the District Court entered a preliminary injunction requiring Defendants-Appellants ("the government") to "*immediately* rescind" an access ban imposed on Plaintiff-Appellee The Associated Press ("the AP") for the past two months. Prelim. Inj. Order at 41 (ECF 46) ("Injunction Order") (emphasis added).[1] The District Court correctly concluded, based on a largely uncontested record, that the AP is likely to establish that the government unconstitutionally discriminated against it on the basis of its viewpoint, and unconstitutionally retaliated against the AP for its exercise of First Amendment freedoms, by excluding AP journalists from events open to the White House press pool and White House press corps because of the AP's continued use of the name Gulf of Mexico. *Id.* at 29-30, 32, 36. The District Court therefore ordered the government to cease its unconstitutional behavior and "put the AP on an equal playing field as similarly situated outlets." *Id.* at 21, 40.

The government now asks this Court to let it continue what the District Court concluded is an ongoing First Amendment violation causing irreparable harm. Emergency Mot. to Stay Pending Appeal and an Immediate Administrative Stay ("Stay Mot."). The government offers this Court the same flawed arguments for a stay that it presented to the District Court, which concluded today that the

---

[1] ECF references herein are to the District Court docket.

1

government's nearly identical motion "fails on the law" and "misconstrues the facts." *See* Apr. 11, 2025 Mem. Order at 2 (ECF 55) ("Stay Denial Order"). Here, too, for the same reasons, the government fails to satisfy the demanding standard for a stay pending appeal. This Court should deny the Stay Motion.

## FACTUAL BACKGROUND

### A. The AP and the White House Press Pool

The AP is one of the world's oldest and most trusted news organizations, reaching four billion people every day. Am. Compl. ¶ 5 (ECF 26). The AP is also known for its Stylebook, in which it publishes standards for usage, spelling, and grammar to facilitate consistency in news writing. *Id.* ¶ 10.

The AP was a founding part of the group of journalists covering the White House and the President – a group today known as the White House press pool. *Id.* ¶¶ 6, 37. The press pool accompanies the President almost everywhere he goes, serving as the public's eyes and ears. *Id.* ¶¶ 6, 37. AP also attends events open to any journalist with a White House press credential, in large spaces such as the East Room, which can fit over 100 journalists. *Id.* ¶ 7.

The modern White House press pool traditionally included at least three wire reporters (recently, one each from the AP, Reuters, and Bloomberg), four photographers (recently, one each from the AP, Reuters, AFP, and The New York Times), three network television journalists, a radio correspondent, and at least one

print reporter.  *Id.* ¶ 32.  The wire services have the broadest reach – particularly among outlets that cannot afford to provide their own White House coverage.

By observing events in person, pool reporters gain insights that they simply cannot glean secondhand.  *See* Decl. of George Condon ¶¶ 9-13 (ECF 27-9) (highlighting examples); Hr'g Tr. at 109:25-111:18 (same).  When AP journalists cover presidential events, they publish wire reports and photos "in near real time." *See* Mar. 27, 2025 Hr'g Tr. at 101:14-102:8 (ECF 45); *see also id.* at 28:9-29:3.

## B.     The Gulf of Mexico and Mount McKinley

On January 20, 2025, President Trump issued an Executive Order renaming the portion of the Gulf of Mexico within the United States as the Gulf of America. Exec. Order No. 14172.  In the same Executive Order, President Trump also renamed the mountain Denali as Mount McKinley.  *Id.* ¶ 52.  The AP addressed both of these name changes on January 23, 2025, when it released guidance specifying that it would refer to the Gulf of Mexico "by its original name *while acknowledging the new name Trump has chosen*" in its reporting and Stylebook. *Id.* ¶¶ 51-52.  The AP explained that, "as a global news agency that disseminates news around the world, the AP must ensure that place names and geography are easily recognizable to all audiences."  *Id.* ¶ 51.  The AP announced that it would follow the Mount McKinley name change because the federal government has authority to rename locations within the United States.  *Id.* ¶ 52.

**C.      The White House Tries to Coerce the AP into Changing its Journalism**

On the morning of February 11, 2025, White House Press Secretary Karoline Leavitt summoned AP Chief White House Correspondent Zeke Miller to her office. *See* Hr'g Tr. at 111:22-25. Leavitt told Miller that AP journalists would not be permitted in the Oval Office as press pool members unless the AP revised its Stylebook to refer to the Gulf of America. *Id.* at 111:19-112:10.

The AP declined to reverse its editorial decision. *Id.* ¶ 53. As a direct result of that decision, White House staff barred an AP text journalist from attending an Executive Order signing and press conference with Elon Musk in the Oval Office that day. *Id.* ¶ 54. An AP text journalist was also barred that evening from an event in the Diplomatic Reception Room. *Id.* ¶ 56.

The AP promptly objected. AP Executive Editor Julie Pace published a statement explaining that "limiting our access to the Oval Office based on the content of AP's speech not only severely impedes the public's access to independent news, it plainly violates the First Amendment." *Id.* ¶ 55. Leavitt defended the White House's decision during a press briefing the next day by claiming that the AP was telling "lies" by using the Gulf of Mexico name. *Id.* ¶ 58. The access denials continued. *Id.* ¶¶ 59-60. Pace's strenuous objections did too, with a February 12 letter to White House Chief of Staff Susan Wiles. *Id.* ¶ 57.

4

On February 14, 2025, White House Deputy Chief of Staff Taylor Budowich posted online that the AP's journalists were now indefinitely barred from "access to limited spaces, like the Oval Office and Air Force One" due to the AP's refusal to make the Gulf of America the primary term used in its reporting and Stylebook, adding that the AP's "journalists and photographers will retain their credentials to the White House complex." *Id.* ¶ 63. Budowich further claimed, falsely, that the AP had a "commitment to misinformation" and published "irresponsible and dishonest reporting." *Id.*[2]

On February 18, 2025, Wiles responded to Pace's letter, stating that the White House's "view as to why we arrived in this point" is that the AP's Stylebook "has been misused, and at times weaponized, to push a divisive and partisan agenda" and that the AP should use the Gulf of America name "as an American guideline." *Id.* ¶ 68. At a Mar-a-Lago press conference (from which the AP was barred), President Trump confirmed that the White House would "keep [the AP] out until such time that they agree that it's the Gulf of America." *Id.* ¶ 69.

---

[2] Ironically, the record reflects that President Trump, for the cover of his new book *Save America*, chose a photo taken by AP photographer Evan Vucci, who testified in this case, *see* Hr'g Tr. at 21:11-19, and that the White House cited primarily to AP reporting in a press release about the President's address to a joint session of Congress, *see id.* at 152:15-24; *see also* 3d Decl. of Zeke Miller Ex. C (ECF 37-5).

**D.     The AP Files Suit to Vindicate its Constitutional Rights**

The AP filed this lawsuit on February 21, 2025, to vindicate its rights to free expression under the First Amendment and to due process under the Fifth Amendment. *Id.* ¶ 73. The District Court promptly held a hearing on the AP's request for a temporary restraining order. The District Court declined that request to allow for additional briefing and fact-finding on an expedited basis, but instructed the government that the precedent "is uniformly unhelpful to . . . the White House when the White House has banned reporters in the past," such that "[i]t might be a good idea for the White House" to reconsider whether "what they're doing is really appropriate in light of the case law." *Id.* ¶ 80.

Flouting the District Court, Leavitt announced at a February 25, 2025, press briefing that, going forward, White House officials, rather than the White House Correspondents Association, would select the pool. *Id.* ¶ 81. After Leavitt's announcement, the number of pool spots for wire services shrank from three (AP, Reuters, and Bloomberg) to one or two (Reuters and/or Bloomberg, with the AP still banned), and the AP has remained barred from the four photographer spots. *Id.* ¶ 84. Since February 25, 2025, AP White House journalists have been excluded from all events open to the White House press pool and from many events open to all credentialed members of the White House press corps. *See* Injunction Order at 5.

### E.     The District Court Grants a Preliminary Injunction

Given the change in control over the press pool, the AP filed an Amended

Complaint and Amended Motion for Preliminary Injunction on March 3, 2025.

The District Court granted the AP's motion on April 8, 2025.  *See* Injunction

Order.  The District Court largely based its findings on a six-hour evidentiary

hearing, which included testimony from two AP witnesses – Miller and Vucci –

but no government witnesses.  After carefully considering the facts and the law, the

District Court entered a 41-page order granting injunctive relief on the AP's First

Amendment viewpoint discrimination and retaliation claims.[3]  The District Court

ordered the government to "*immediately* rescind" its access ban on the AP.

Injunction Order at 41.  It also entered a brief stay until April 13 "to provide the

Government time to seek an emergency stay from a higher court and to prepare to

implement the Court's injunction."  Apr. 8, 2025 Order (ECF 47).

## ARGUMENT

A stay is not to be granted lightly, especially in cases of great public

importance like this one.  *See, e.g.*, *WP Co. v. SBA*, 2020 WL 6887623, at \*5

(D.D.C. Nov. 24, 2020) (denying government's motion for stay pending appeal).

"To obtain such exceptional relief, the stay applicant must (1) make a strong

---

[3] The Court noted that it therefore "need not reach the AP's Fifth Amendment, right to petition, or compelled speech claims."  Injunction Order at 39.

showing that [it] is likely to succeed on the merits; (2) demonstrate that it will be irreparably injured before the appeal concludes; (3) show that issuing a stay will not substantially injure the other parties interested in the proceeding; and (4) establish that the public interest favors a stay." *KalshiEX LLC v. CFTC*, 119 F.4th 58, 63 (D.C. Cir. 2024) (internal marks omitted) (denying stay).

The government does not make the necessary showing on *any* of these factors: the government is unlikely to prevail on appeal; the government will suffer *no* harm from the Order going into effect, while the AP will suffer *irreparable* harm absent a stay; and the public interest squarely opposes a stay. *See generally* Stay Denial Order. The Court should deny the Stay Motion.

## I.     THE GOVERNMENT IS NOT LIKELY TO PREVAIL ON APPEAL.

The government's claim that it is likely to prevail on appeal is at odds with controlling precedent, as well as the District Court's actual order. Stay Mot. at 12-21. The force of the District Court's logic, its detailed factual findings, and the narrow and reasonable relief that the Injunction Order provides the AP, demonstrate how unlikely the government is to succeed on appeal.

As the District Court held, "under the First Amendment, if the Government opens its doors to some journalists—be it to the Oval Office, the East Room, or elsewhere—it cannot then shut those doors to other journalists because of their viewpoints. The Constitution requires no less." Injunction Order at 2. That

applied a rule understood since the nation's "early centuries": "the First Amendment . . . safeguard[s the public's] natural right to heap honest criticism upon the Government without fear of official reprisal." *Id.* at 16 (citing Jud Campbell, *Natural Rights and the First Amendment*, 127 Yale L.J. 246, 280 (2017)).

The District Court thus followed the precedent that the press and public "have an interest protected by the first amendment in assuring that restrictions on newsgathering be no more arduous than necessary, and that individual newsmen not be arbitrarily excluded from sources of information." *Sherrill v. Knight*, 569 F.2d 124, 129-30 (D.C. Cir. 1977). Because here, the "Government has been brazen about . . . restricting the AP's access *precisely* because of the organization's viewpoint," the District Court held that "the AP is likely to succeed on the merits of its First Amendment viewpoint-discrimination and retaliation claims for both its press pool and East Room allegations." Injunction Order at 19, 21. For the same reasons, the AP is likely to prevail on appeal.

### A. The Government Is Not Likely To Prevail On Appeal Against The AP's First Amendment Viewpoint-Discrimination Claims.

The government's exclusion of AP journalists is unconstitutional viewpoint-based discrimination and retaliation. "Viewpoint discrimination, whether by legislative enactment or executive action, violates the First Amendment." *Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122, 1146 (D.C. Cir. 2023).

Indeed, viewpoint-based discrimination "is uniquely harmful to a free and democratic society." *NRA of Am. v. Vullo*, 602 U.S. 175, 187 (2024).

The government has not shown that it is likely to succeed in persuading this Court to permit the White House's brazen viewpoint discrimination and retaliation. As the District Court correctly noted, "[i]n modern jurisprudence, forum analysis controls the extent to which the government may restrict access to public property for First Amendment activities." Injunction Order at 17 (citing *Price v. Garland*, 45 F.4th 1059, 1067 (D.C. Cir. 2022)). Indeed, just days ago this Court reinforced that, in a forum analysis, courts "first consider the level of First Amendment scrutiny that should be applied," which "depends on the type of forum for speech that has been created by the government." *Ateba v. Leavitt*, --- F.4th ----, 2025 WL 1036451, at *4 (D.C. Cir. Apr. 8, 2025). In determining here that the category of either nonpublic or limited public forum was appropriate, the District Court adhered to precedent, holding that the White House's restrictions must be "viewpoint neutral and reasonable" in light of "the forum's purpose." *Id.* at *6.

Based on uncontested facts, the Court found that because "the Government has chosen to open the Oval Office" and "other press pool locations and events," as well as larger spaces such as "the East Room" to "some reporters for newsgathering," these are "nonpublic for[a]," from which "[t]he Government . . . cannot exclude the AP from access based on its viewpoint." Injunction Order at

29-30.  As the record makes clear, "the Government has discriminated against it based on its viewpoint, a claim the Government all but concedes." *Id.* at 29; *see also, e.g.*, Hr'g Tr. at 190:14-24; Stay. Mot. at 8 (confirming this "undisputed" fact).  The government is unlikely to succeed in overturning the District Court's clearly correct First Amendment analysis.

The government baldly claims that forum doctrine does not apply because "the personal workspace of the President" cannot be "subject to forum analysis," relying on the Court's decision in *Price*, 45 F.4th at 1068, 1070.  Stay Mot. at 13-14.  As the District Court observed, this argument "is untethered from precedent, which is likely why the Government did not advance this notion at all in its merits arguments for the injunction briefing."  Stay Denial Order at 2.

Moreover, unlike in *Price*, where the Court found the plaintiff had not engaged in actual expression, the District Court found here that "AP journalists are engaged in full-fledged expression when they report from the Oval Office" and other limited spaces.  Injunction Order at 24.  From these spaces, AP journalists "break the news," "use all five senses to craft a unique message for publication," and "ask questions" of the President and those around him—and the loss of these opportunities, as punishment for the AP's expression, "has unquestionably harmed the AP's reporting." *Id.* at 34-36.  Moreover, "*Price* counsels that even if any of the reporters' actions are noncommunicative, the proper inquiry is still a nonpublic

forum analysis which *never* tolerates viewpoint discrimination." *Id.* at 25 (citing *Price*, 45 F.4th at 1071-72) (emphasis added).

The government attempts to manufacture a slippery slope by claiming the operative difference between this case and in *Price* is a mere "tape delay," allowing anyone with a smartphone to create a public forum by livestreaming. Stay Mot. at 15. This argument elides the fact that *Price* did not involve newsgathering, on *any* time delay. *Price*, 45 F.4th at 1072. As the District Court noted, "the statute [in *Price*] had an express carveout exempting newsgathering activities from its restrictions, so *Price* did not disapprove of applying forum analysis to journalistic endeavors." Injunction Order at 25 (citing *id.* at 1064, 1070). Here, the White House has opened the Oval Office, Air Force One, and other spaces to the press pool and other journalists for the express purpose of both gathering and communicating news about the President's official business.

Aside from misreading *Price*, the government asserts that the Oval Office, Air Force One, and Mar-a-Lago are the President's "personal office space" and thus exempt from forum analysis. Stay Mot. at 13-14. Yet the essence of forum doctrine is that "although the government is not required to open such spaces for any speech at all," once the government does so, it cannot restrict that access unreasonably or based on viewpoint. *Ateba*, 2025 WL 1036451, at *5 (citation omitted). The analysis is not triggered "merely because title to the building

reside[s] in the government," Stay Mot. at 13-14, but because the government has invited in certain speakers.  That is how, even though the public has no general right of access to the White House, the White House still contains nonpublic fora. *Id.*; *see also Ateba*, 2025 WL 1036451, at *1 (noting the White House contains both "*the President's* private living quarters" and "*government* office space") (emphasis added).

The government cites no case law or record evidence to support the novel proposition that forum analysis goes out the window when the President deems a space "private."  Moreover, the government "misconstrues the facts" regarding these "so-called intimate space[s]."  Stay Denial Order at 2-3.  The President uses the Oval Office and Air Force One to conduct official business – just as he uses Mar-a-Lago as his "winter White House"[4] – and he continues to open up all of these spaces to the press pool and other journalists to cover the President's work. *See* Stay Denial Order at 2-3 (explaining that the Oval Office "is not just 'a personal workspace,'" that claiming Air Force One "is an intimate space is simply not credible," and that Mar-a-Lago has "large public rooms open for rental" and

_____

[4] *See* Marc Caputo, *Trump dubs Mar-a-Lago the new 'Winter White House'*, Politico (Jan. 18, 2017), https://www.politico.com/states/florida/story/2017/01/trump-dubs-mar-a-lago-the-new-winter-white-house-108841.

hosted "an Executive Order signing ceremony with many journalists and local

officers in the audience"). Indeed, the Court can see this for itself:

**President Trump and Elon Musk Speak to Press Pool in Oval Office (AP, Feb. 11, 2025)[5]**



**President Trump Speaks to Press Pool on Air Force One (AP, Jan. 26, 2025)[6]**



---

[5] *See* Chris Megerian & Michelle L. Price, *Musk appears at White House defending DOGE's work but acknowledging mistakes*, AP (Feb. 11, 2025), https://apnews.com/article/trump-downsizing-federal-workers-doge-00683abc4de44a151f26aaa6cb0d0f30. This photo was taken before the White House extended its ban to AP photographers. Am. Compl. ¶ 54.

[6] *See* Will Weissert, *Trump's Q&A on Air Force One goes from the plane's color scheme to the fate of TikTok and Canada*, AP (Jan. 26, 2025),

**President Trump Holds Super Tuesday Party at Mar-a-Lago**
**(AP, Mar. 5, 2024)[7]**



The First Amendment applies to all nonpublic fora, regardless of their

location.  *See, e.g.*, *Knight First Amend. Inst. v. Trump*, 928 F.3d 226, 235 (2d Cir.

2019) (holding President Trump's personal Twitter account was subject to forum

analysis), *vacated on other grounds sub nom. Biden v. Knight First Amend. Inst.*,

141 S. Ct. 1220 (2021).  Because the government opened the Oval Office, Air

Force One, Mar-a-Lago and other spaces to the press pool and press corps, as the

District Court correctly found, it cannot ban the AP based on its viewpoint.

---

https://apnews.com/article/trump-air-force-one-tiktok-canada-workers-06489fe4a05a352ce553e7da94a923a7.

[7] *See In case you missed it: Trump's estate was packed for a party*, AP (Mar. 5, 2024), https://apnews.com/live/super-tuesday-updates-results#0000018e-1293-d0c3-afee-ba9b00e00000.

Next, the government relies on the out-of-circuit decision in *Baltimore Sun v. Ehrlich*, 437 F.3d 410 (4th Cir. 2006). *See* Stay Mot. at 16-21. Yet *Ehrlich* did not involve forum analysis, so the District Court correctly found it "of little weight." Injunction Order at 26. There, the Fourth Circuit held that a governor did not violate the First Amendment in directing state officials not "to *speak with*" two Baltimore Sun reporters. 437 F.3d at 413 (emphasis added). Yet other Sun reporters retained access to press conferences and briefings. *Id.* at 413-14. Here, conversely, the entire AP White House team has been excluded on the basis of its viewpoint. Moreover, as the District Court found, *Ehrlich* "focused on *dialogue* with government officials," while this cases involves "restrictions on *physical access* to government property for newsgathering." Injunction Order at 26.

The government, in response to the District Court's well-reasoned interpretation of precedent, claims that challenges involving either an "interview or physical access lacks constitutional significance." Stay Mot. at 19. That claim ignores controlling case law. *See Sherrill*, 569 F.2d at 129 (holding that "the first amendment" requires that journalists' "access not be denied arbitrarily or for less than compelling reasons," but disclaiming restrictions on the "discretion of the President to grant interviews or briefings with selected journalists").

The government is unlikely to succeed on their appeal from this claim.

**B.     The Government Is Not Likely To Prevail On Appeal As To The First Amendment Retaliation Claims.**

The government also is unlikely to succeed in establishing that the White House's retaliation does not violate the AP's First Amendment rights. *See* Injunction Order at 32-36. In fact, the government almost wholly overlooks this independent basis for injunctive relief. *See* Stay Mot. at 19-20 n.6 (addressing claim in two-sentence footnote). The government likewise ignores that the ban retaliates against the AP for its exercise of the right to petition the courts and attempts to compel the AP's speech. Indeed, the government failed to address – and therefore conceded – those arguments below. *See* AP's Reply (ECF 37).

"As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (cleaned up). Even "[a]n ordinarily permissible exercise of discretion may become a constitutional deprivation if performed in retaliation for the exercise of a First Amendment right." Injunction Order at 32 (quoting *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002)). Unconstitutional retaliation occurs when a plaintiff shows:

> (1) he or she engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal

> link between the exercise of a constitutional right and the adverse action taken against him or her.

*Ateba v. Jean-Pierre*, 706 F. Supp. 3d 63, 86 n.10 (D.D.C. 2023) (cleaned up).

The AP "straightforward[ly]" satisfies each element of this test:

> The AP made an editorial decision to continue using "Gulf of Mexico" in its Stylebook. The Government responded publicly with displeasure and explicitly announced it was curtailing the AP's access to the Oval Office, press pool events, and East Room activities. If there is a benign explanation for the Government's decision, it has not been presented here.

Injunction Order at 33. This retaliation has "undoubtedly" had an "adverse" impact on the AP. *Id.* AP White House journalists are "getting 'absolutely [] slaughtered'" by the government's access denials. *Id.* (quoting Hr'g Tr. at 37:22). AP photographers are stuck with "qualitatively and quantitatively inferior" images taken by others, which they can only publish with a delay that leaves the AP "'dead in the water'" as compared to competitors. *Id.* at 33-34 (quoting Hr'g Tr. at 34:19). Likewise, the AP's text journalists are less able to receive and publish information in real time, and "the AP cannot reproduce" this reporting "by watching from afar." *Id.* at 34-35. The AP's "business model" is suffering, because its customers rely on, and pay for, "its ability to rapidly supply new photographs and breaking news," and may "flee to other news services absent" relief. *Id.* at 35, 38. One AP advertiser canceled a $150,000 contract. *Id.* "The AP has thus shown that the Government retaliated against it for an exercise of its

First Amendment freedoms, and that its speech has been adversely affected as a result." *Id.* at 36. The government cannot show it is likely to convince this Court otherwise, and in fact it has not attempted to do so.[8] *See id.* at 33-35.

Because the government has not shown any "likelihood" of prevailing on appeal, it has failed to carry its burden on the first element of the stay test.

## II. THE GOVERNMENT WOULD NOT BE HARMED ABSENT A STAY.

On the second stay factor, the government incorrectly asserts that it will be irreparably harmed without a stay because the Injunction Order "restricts the White House's discretion from making its own judgments about whom it will admit into some of the most restricted spaces on the planet." Stay Mot. at 25-26. This argument fails because the Injunction Order does no such thing: it expressly recites that the President need not open any given event to the press at all, need not speak to any particular reporter, and can restrict access based on security concerns, space constraints, or any other viewpoint-neutral and reasonable basis. *See* Injunction Order at 1; *Sherrill*, 569 F.2d at 129. All the First Amendment requires is that when the government *does* open spaces to the press, it cannot selectively exclude journalists based on their viewpoint. *Id.* Following this core First Amendment

---

[8] The AP's showing of *material* adverse impact further distinguishes this case from *Ehrlich*, where the Fourth Circuit noted the Sun had shown only a "*de minimis* impact." 437 F.3d at 419.

rule will cause no harm. *Karem v. Trump*, 960 F.3d 656, 668 (D.C. Cir. 2020) (the White House has no interest in the "enforcement of an unconstitutional law").

Nor could the government show that restoring the AP to the press pool rotation will cause harm. "[T]he AP had two permanent spots—one print reporter and one photographer," in the White House press pool "for over a century." Injunction Order at 2. As a wire service, the AP has long had "the broadest reach," with "subscribers across the country and the globe." *Id.* at 4. Maintaining the status quo and permitting the AP to attend events open to the press pool and press corps, to the benefit of billions of readers globally, would not harm the government in the slightest. This factor, too, weighs strongly in favor of denying the government's motion for a stay.

## III.  A LONGER STAY WOULD SUBSTANTIALLY HARM THE AP AND THE PUBLIC.

The public interest and the prospect of even more irreparable harm to the AP also weigh decisively against the Stay Motion. It is axiomatic that "'[t]he loss of First Amendment freedoms, for even minimal periods of time,' constitutes irreparable harm when the plaintiff demonstrates that its 'First Amendment interests are either threatened or in fact being impaired at the time relief is sought.'" Injunction Order at 37 (quoting *Nat'l Treasury Emps. Union v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991) (Thomas, J.) (cleaned up)).

The government brushes off the harms it has caused to the AP and the public by claiming that the AP "remains able to cover the White House" and can only show harm "per se." Stay Mot. at 22. This claim flies in the face of the extensive record evidence – developed during the six-hour evidentiary hearing – of the AP's significant and ongoing harms. The only evidence that the government cites is Mr. Miller's testimony, which they miscast to claim that the AP has had access to East Room events. Stay Mot. at 26-27 (quoting Hr'g Tr. at 145:7-13). As the District Court correctly found from the extensive record, the AP has been excluded from pool-only East Room events, the AP's *text* journalists have been "systematically and almost completely excluded" from the East Room, and its "photographers have suffered curtailed access." Injunction Order at 9; *see also* Hr'g Tr. at 117:23-118:2, 33:20-21; *see also* Stay Denial Order at 4 ("The Government's cherry-picked quote from the cross-examination of an AP witness does not undermine the Court's comprehensive findings of fact.").

As the District Court held, "[t]he AP provided abundant evidence that its First Amendment right to gather and quickly disseminate news about the President has been severely hampered by—and continues to be hampered by—the ban on press pool admission and the highly circumscribed access to limited-access events." Injunction Order at 37. This harm is irreparable because "there is no real replacement for the missed photos" and text reporting. *Id.* at 34. The AP also

faces significant financial harms, none of which are recoverable due to the government's sovereign immunity. *Id.* at 38.

The government also fails to confront that the public is suffering these harms along with the AP. "[T]here is always a strong public interest in the exercise of free speech rights otherwise abridged by an unconstitutional regulation." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016). The AP's ability to report on presidential events informs the public about the activities of the President and other public officials, which is essential in a democracy. *See* Am. Br. of Amici Curiae State Democracy Defenders Fund & Former Public Officials at 14-15 (ECF 49). "Local news outlets are particularly reliant on wire services for news from Washington, D.C." Injunction Order at 4. Further delaying injunctive relief would irreparably harm not only the AP, but also everyone its journalism reaches.

Importantly, a stay would also "materially alter[] the status quo in an unprecedentedly injurious manner to the public as well as to" the AP. *Harris v. Bessent*, 2025 WL 980278, at *47 (D.C. Cir. Mar. 28, 2025) (Millet, J., dissenting) (calling for denial of stay), *vacated on reconsideration en banc*, 2025 WL 1021435 (D.C. Cir. Apr. 7, 2025) (denying stay). "The point of a stay is to preserve the status quo pending litigation," which is defined as "the last uncontested status which preceded the pending controversy." *Id.* (internal marks omitted). Here, the

status quo, for decades and preceding the February 11 White House decision that precipitated this controversy, is no access ban on the AP.

On balance, none of the four factors supports a stay, and all weigh strongly against any additional delay in implementing the injunction. The Court should therefore deny the government's motion and maintain the April 14 effective date for the injunction.

## CONCLUSION

For the foregoing reasons, the AP respectfully requests that the Court deny the emergency motion for a stay pending appeal and an administrative stay.

Dated: April 11, 2025      Respectfully submitted,

BALLARD SPAHR LLP

*/s/ Jay Ward Brown*
Jay Ward Brown (#437686)
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Sasha Dudding (#1735532)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
brownjay@ballardspahr.com
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
duddings@ballardspahr.com

*Counsel for Plaintiff The Associated Press*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d), the undersigned counsel certifies that this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this Response was composed using Microsoft Word in 14-point Times New Roman font, a proportionally spaced font. The word count is 5,200 words.


April 11, 2025                                    _/s/ Jay Ward Brown_____
                                                 Jay Ward Brown

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 11th day of April, 2025, a true and correct copy

of the foregoing was served on counsel for all parties via the Court's ECF system.

*/s/ Jay Ward Brown*
Jay Ward Brown